Robert V. Prongay (SBN 270796)
  rprongay@glancylaw.com
Charles Linehan (SBN 307439)
  clinehan@glancylaw.com
Pavithra Rajesh (SBN 323055)
  prajesh@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff Mohamed A. Zahabi*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMED A. ZAHABI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FISKER INC., HENRIK FISKER, GEETA GUPTA-FISKER, and JOHN FINNUCAN,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Mohamed A. Zahabi ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Fisker Inc. ("Fisker" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Fisker; and (c) review of other publicly available information concerning Fisker.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Fisker securities between August 4, 2023 and November 20, 2023, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Fisker is an electric vehicle company based in California. The Company went public in October 2020 via reverse merger with a special purpose acquisition company called Spartan Energy Acquisition Corp. The Company has one model currently launched, the Fisker Ocean (the "Ocean"), an electric vehicle which was released in the United States in June 2023.

3. On November 8, 2023, before the market opened, Fisker announced that the completion of the Company's financial statements would be delayed due to the appointment of a new chief accounting officer ("CAO") and the departure of the Company's former CAO. The Company had previously announced former CAO, Defendant John Finnucan ("Finnucan") provided notice of intent to resign on September 19, 2023, as effective October 27, 2023.  Fisker's new CAO, Florus Beuting ("Beuting"), was hired effective as of November 6, 2023. The Company advised it "expects to file its Form 10-Q by November 14, 2023."

4.     On this news, the Company's share price fell $0.38, or 8.7%, to close at $3.99 per share on November 8, 2023, on unusually heavy trading volume.

5.     Then, on November 13, 2023, after the market closed, Fisker announced its third quarter 2023 financial results, reporting a loss of $91.0 million and $0.27 loss per share. The Company also reported $78.02 million in selling, general and administrative operating costs and expenses, as well as $9.42 million for research and development, totaling $87.44 million for total operating costs and expenses for the three months ended September 30, 2023. The Company also cut its production forecast for the year and disclosed that, though 4,725 Oceans were built in the third quarter, only 1,097 were delivered to customers. The Company also announced it would be unable to timely file the Company's Quarterly Report on Form 10-Q for the quarter ended September 30, 2023. The Company disclosed, in preparing its results, it had determined "it has material weaknesses" in "internal control over financial reporting."

6.     On that same day, the Company held an earnings call wherein Defendants disclosed that the delay in reporting was due to having a "highly complex quarter" including "very complex accounting along with convertible notes and accounting for derivative" and "things like raw material inventory accounting and finished goods inventory accounting[.]" The Company also disclosed that "delivery and the service infrastructure" was limiting deliveries and, as a result, the Company was "in the process of dramatically overhauling our service and delivery infrastructure."

7.     On this news, the Company's share price fell $0.77, or 18.7%, to close at $3.34 per share on November 14, 2023, on unusually heavy trading volume.

8.     On November 20, 2023, after the market closed, the Company disclosed that Beuting (the CAO hired November 6, 2023) had provided notice of his intent to resign from the Company on November 14, 2023, effective immediately.

9.      On this news, the Company's share price fell $0.35, or 15%, to close at $2.00 per share on November 21, 2023, on unusually heavy trading volume.

10.      Finally, on November 22, 2023, the Company filed its Form 10-Q quarterly report for the period ended September 30, 2023, which disclosed that the Company had "identified approximately $20 million of expenses" which were "incorrectly recorded primarily as selling, general and administrative expenses in our preliminary earnings results, but were later determined to be associated with production set-up activities" and that "other inventory adjustments were recorded resulting in a $4.0 million increase in net loss subsequent to the preliminary earnings results."

11.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Fisker had a material weakness in its internal control over financial reporting; (2) that Fisker had incorrectly accounted for certain costs; (3) that as a result the Company was likely to delay filing its quarterly report; (4) that Fisker's infrastructure was limiting its ability to deliver its production; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

12.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

16.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

17.     Plaintiff Mohamed A. Zahabi, as set forth in the accompanying certification, incorporated by reference herein, purchased Fisker common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

18.     Defendant Fisker is incorporated under the laws of Delaware with its principal executive offices located in Manhattan Beach, California. Fisker's Class A common stock trades on the New York Stock Exchange ("NYSE") under the symbol "FSR."

19.     Defendant Henrik Fisker ("H. Fisker") was the founder, Chairman and Chief Executive Officer ("CEO") at all relevant times.

20.     Defendant Geeta Gupta-Fisker ("Gupta-Fisker") has been the Company's Chief Financial Officer ("CFO") at all relevant times.

21.     Defendant Finnucan was the Company's CAO from October 12, 2020, until October 27, 2023.

22.     Defendants H. Fisker, Gupta-Fisker and Finnucan (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

23.     Fisker is an electric vehicle company based in California. The Company went public in October 2020 via reverse merger with a special-purpose acquisition company. The Company has one model currently launched, the Fisker Ocean, an electric vehicle which released in the United States in June 2023.

### Materially False and Misleading
### Statements Issued During the Class Period

24.     The Class Period begins on August 4, 2023. On that day, the Company announced its second quarter 2023 financial results in a press release which stated in relevant part:[1]

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

**Second Quarter 2023 Financial Highlights:**

- Revenue totaled $825 thousand compared to revenue of $10 thousand in the second quarter of 2022.

- Gross margin was 7.5% on a reported basis, and 18.5% excluding discounted early-stage investor deliveries.

- Loss from operations totaled $87.9 million, including $9.0 million of stock-based compensation expense.

- Net loss totaled $85.5 million and $0.25 loss per share. Weighted average shares outstanding totaled 335.9 million for the three months ended June 30, 2023.

- Net cash used in operating activities totaled $128.1 million and capital expenditures totaled 91.3 million.

- Cash and cash equivalents and restricted cash was $521.8 million as of June 30, 2023; this excludes $300 million in gross proceeds from the July convertible note offering and $33.4 million in VAT receivables which we expect to receive as refunds or to monetize against vehicle sales taxes.

\*          \*          \*

**2023 Business Outlook**

Fisker expects to produce 20,000-23,000 units in 2023, provided Fisker's suppliers and partners can support this volume and ramp. The following information reflects Fisker's expectations for key non-GAAP operating expenses and capital expenditures for full-year 2023. Fisker is projecting the total of these items to be within a range of $565 million to $640 million. Fisker anticipates an 8-12% gross margin range for full year 2023, provided input costs do not change dramatically.

\*          \*          \*

**Relevant Updates**

- ***1,022 Fisker Ocean vehicles were produced in Q2 2023. A couple of suppliers had challenges ramping to targeted Q2 levels, but the company is intently focused on working with all suppliers to swiftly ramp. In July, 1,009 Fisker Oceans were produced up from 741 units in June while the assembly rate per day reached 140 at the end of July, up from 80 per day at the end of June.*** July had reduced shifts and fewer working days due to the planned Magna Steyr annual summer shutdown.

- *Fisker updates 2023 production outlook to 20,000-23,000 units as a key supplier required additional time to ramp their capacity to meet our 2H 2023 timeline.*

- The Company began US and European deliveries of the Fisker Ocean One in California, Denmark and Germany with ***11***

*customer deliveries completed in 2Q* partly due to a later start in the quarter, logistics optimization, and extra time required to accumulate appropriate quantities for efficient transport.

25.     On August 9, 2023, the Company filed its second quarter 2023 financial results on Form 10-Q with the SEC (the "2Q2023 10-Q") which stated in relevant part:

**Recent Developments**

We achieved several key milestones in May, June, July, and August 2023, including (i) the opening of customer facilities in Munich, London, Oslo and Stockholm; (ii) the initiation of the production ramp up phase for the Fisker Ocean; (iii) the achievement by the Fisker Ocean Extreme with 20 inch wheels of an EPA estimated total range of 360 miles; (iv) the receipt by the Fisker Ocean Extreme of both an EPA Certificate of Conformity and a California Air Resources Board Executive Order; (v) *the commencement of deliveries of the limited edition Fisker Ocean One in Europe and the United States; (vi) the production of 1,022 Fisker Oceans during the second quarter for customer deliveries, as well as units designated for engineering and marketing use; (vii) the production of 1,009 Fisker Oceans in July – reaching an assembly rate of 140 vehicles per day at the end of month;* (viii) the publishing of our inaugural Lifecycle Assessment report; (ix) the investment in additional battery pack capacity in July to support higher volumes next year; (x) bolstering the balance sheet with a successful offering of $340 million in aggregate principal of 0% senior unsecured convertible notes due in 2025; (xi) completing Fisker's first large-scale media event with production vehicles in Vienna, Austria where two dozen media correspondents test drove Fisker Oceans; and (xii) revealing Fisker's future product lineup at the company's inaugural Product Vision Day.

\*          \*          \*

As outlined earlier this year, our production forecasts are linked to supply chain readiness and receipt of multiple regulatory homologation approvals across our launch markets. The timing of these approvals shifted in the first half of this year, which impacted our 2023 volume forecasts and supplier ramp readiness. Based on our current supplier capacity expectations, we currently forecast we will produce 20,000 to 23,000 vehicles during 2023.

26.     The 2Q2023 10-Q reported the following, in relevant part, concerning revenues and the cost of revenues:

In the second quarter of 2023, we began producing vehicles for deliveries to our customers and, accordingly, we are recognizing vehicle revenues from the sale of initial Fisker Ocean SUVs. Merchandise sales and home charging solutions are not intended to comprise a significant portion of the Company's revenues. *Over the course of the second half of 2023, we will ramp production volumes at a measured pace to ensure the*

*supplier base can delivery high-quality components in line with our serial production run-rate.*

*During the six month period ended June 30, 2023, the Company delivered 11 vehicles and recognized net revenue of $712 thousand with related cost of revenues totaling $665 thousand resulting in gross profit of $47 thousand.* Gross profit from vehicle sales is lower due to discounts on vehicles sold to certain investors who held rights to a free SUV based on Fisker's based trim level. The Company had no vehicle sales during the corresponding six month period ended June 30, 2022.

27.    The 2Q2023 10-Q reported the following inventory as of June 30, 2023, in thousands:

|  | As of June 30, 2023 |
| --- | --- |
| Raw materials | $ 109,090 |
| Work in progress | 61,886 |
| Finished goods | 2,020 |
| Total | $ 172,996 |

28.    The 2Q2023 10-Q reported 33,891,845 convertible senior notes and 36,936,742 stock options and warrants which were excluded from the computation of diluted net loss per share of common stock as of June 30, 2023.

29.     The above statements identified in ¶¶ 24-28 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Fisker had a material weakness in its internal control over financial reporting; (2) that Fisker had incorrectly accounted for certain costs; (3) that as a result the Company was likely to delay filing its quarterly report; (4) that Fisker's infrastructure was limiting its ability to deliver its production; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

30.     On November 8, 2023, before the market opened, Fisker announced that the completion of the Company's financial statements would be delayed due to the appointment of Beuting as CAO and the departure of Defendant Finnucan, the former CAO. The Company had previously announced Defendant Finnucan provided notice of intent to resign on September 19, 2023, effective October 27, 2023. Fisker's new CAO was hired effective as of November 6, 2023. The Company advised it "expects to file its Form 10-Q by November 14, 2023."

31.     On this news, the Company's share price fell $0.38, or 8.7%, to close at $3.99 per share on November 8, 2023, on unusually heavy trading volume.

32.     Then, on November 13, 2023, after the market closed, Fisker announced its third quarter 2023 financial results, reporting a loss of $91.0 million and $0.27 loss per share. The Company also reported $78.02 million in selling, general and administrative operating costs and expenses, as well as $9.42 million for research and development, totaling $87.44 million for total operating costs and expenses for the three months ended September 30, 2023. The Company also cut its production forecast for the year and disclosed that though 4,725 Oceans were built in the third quarter, only 1,097 were delivered to customers.

33.     The Company also announced it would be unable to timely file the Company's Quarterly Report on Form 10-Q for the quarter ended September 30, 2023. The Company filed a Form NT 10-Q, which stated:

> As previously disclosed, the timing of the appointment of a new chief accounting officer effective November 6, 2023 and the departure of the former chief accounting officer effective October 27, 2023 delayed the completion of the Company's financial statements and related disclosures, and delayed the completion of the Company's quarterly assessment of the effectiveness of its disclosure controls and procedures.

> In the course of completing the preparation of the Report, the Company determined that it has material weaknesses in the Company's internal control over financial reporting. These material weaknesses will be discussed in the Report.

34.   The Company's Form NT 10-Q also shows it responded "Yes" to the question:

Is it anticipated that ***any significant change in results of operations from the corresponding period for the last fiscal year will be reflected by the earnings statements*** to be included in the subject report or portion thereof?

35.   On that day same, the Company held an earnings call. During that call, CFO Gupta-Fisker stated the delay and issues were related to having a "highly complex quarter." Specifically, Defendant Gupta-Fisker stated:

Went from $800,000 of revenue to $71 million of revenue. In multiple countries, For ex., ***very complex accounting along with convertible notes and accounting for derivatives***. So we experienced quite a lot of complexity in the business, and as you rightly pointed out, personnel changes as well. We, of course, continue to understand all these different areas. We are continuing to hire. . . . Some other areas that were extremely complex were because of contract manufacturing, ***things like raw material inventory accounting and finished goods inventory accounting, things that we had not done before and extremely complex as you look at IT integrations with Magna, in-house integrations***. So these unfortunately growing pains and we are addressing all these different areas so we can also mature our systems, hire more people, hire more talent to address all these different areas, and it's a work in progress. We are working tirelessly, very hard to get the queue done, so more to come on that.

36.   In the earnings call, the Company also disclosed that the "delivery and the service infrastructure" was limiting deliveries and, as a result, the Company was "in the process of dramatically overhauling our service and delivery infrastructure." Specifically, Defendant Gupta-Fisker stated:

***Neither our production nor demand are limiting our deliveries, but rather it's the delivery and the service infrastructure***. We have a great product and our customers want the product. We are in the process of dramatically overhauling our service and delivery infrastructure to keep up with the demand until the delivery process has reached our goal, which we expect later this year.

37.   On this news, the Company's share price fell $0.77, or 18.7%, to close at $3.34 per share on November 14, 2023, on unusually heavy trading volume.

38.   Then, on November 20, 2023, after the market closed, the Company disclosed that Beuting, the CAO hired November 6, 2023, had, on November 14,

2023, provided notice of his intent to resign from the Company effective immediately. Specifically, the Company stated:

> On November 14, 2023, Florus Beuting, the chief accounting officer of Fisker Inc. (the "Company"), provided notice of his intent to resign from the Company effective immediately.

39.     On this news, the Company's share price fell $0.35, or 15%, to close at $2.00 per share on November 21, 2023 on unusually heavy trading volume.

40.     Finally, on November 22, 2023, the Company filed its Form 10-Q quarterly report for the period ended September 30, 2023 which disclosed that the Company had "identified approximately $20 million of expenses" which were "incorrectly recorded primarily as selling, general and administrative expenses in our preliminary earnings results, but were later determined to be associated with production set-up activities" and that "other inventory adjustments were recorded resulting in a $4.0 million increase in net loss subsequent to the preliminary earnings results." The Company therefore reported a net loss of $95.22 million and – loss per share for the three months ended September 30, 2023 and a net loss of $298.38 million for the nine months ended September 30, 2023. The Company also reported $67.65 million in selling, general and administrative operating costs and expenses, as well as $13.42 million for research and development, totaling $71.08 million for total operating costs and expenses for the three months ended September 30, 2023.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Fisker securities between August 4, 2023 and November 20, 2023, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Fisker's shares actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Fisker shares were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Fisker or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Fisker; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members

may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## <u>UNDISCLOSED ADVERSE FACTS</u>

47. The market for Fisker's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Fisker's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Fisker's securities relying upon the integrity of the market price of the Company's securities and market information relating to Fisker, and have been damaged thereby.

48. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Fisker's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Fisker's business, operations, and prospects as alleged herein.

49. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Fisker's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class

Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

50. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

51. During the Class Period, Plaintiff and the Class purchased Fisker's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

52. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Fisker, their control over, and/or receipt and/or modification of Fisker's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Fisker, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

53. The market for Fisker's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading

statements and/or failures to disclose, Fisker's securities traded at artificially inflated prices during the Class Period.  On September 15, 2023, the Company's share price closed at a Class Period high of $6.98 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Fisker's securities and market information relating to Fisker, and have been damaged thereby.

54.     During the Class Period, the artificial inflation of Fisker's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Fisker's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Fisker and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

55.     At all relevant times, the market for Fisker's securities was an efficient market for the following reasons, among others:

(a)     Fisker shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Fisker filed periodic public reports with the SEC and/or the NYSE;

(c)     Fisker regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services

and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Fisker was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

56.     As a result of the foregoing, the market for Fisker's securities promptly digested current information regarding Fisker from all publicly available sources and reflected such information in Fisker's share price.  Under these circumstances, all purchasers of Fisker's securities during the Class Period suffered similar injury through their purchase of Fisker's securities at artificially inflated prices and a presumption of reliance applies.

57.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## <u>NO SAFE HARBOR</u>

58.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the

statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Fisker who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

59.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

60.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Fisker's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

61.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of

the Company's securities in an effort to maintain artificially high market prices for Fisker's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

62.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Fisker's financial well-being and prospects, as specified herein.

63.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Fisker's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Fisker and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

64.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other

members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

65.   Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Fisker's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

66.   As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Fisker's securities was artificially inflated during the Class Period.   In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Fisker's securities during the Class Period at artificially high prices and were damaged thereby.

67.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Fisker was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Fisker securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

68.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

69.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

70.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

71.    Individual Defendants acted as controlling persons of Fisker within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had

unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

73.     As set forth above, Fisker and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED:  November 22, 2023

**GLANCY PRONGAY & MURRAY LLP**

By:  _/s/ Charles Linehan_
Robert V. Prongay
Charles Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: clinehan@glancylaw.com

*Counsel for Plaintiff Mohamed A. Zahabi*

**SWORN CERTIFICATION OF PLAINTIFF**

**FISKER INC. SECURITIES LITIGATION**

I, Mohamed A. Zahabi, as assignee of the claims of Valerie Zahabi, certify that:

1.    Valerie Zahabi has assigned to me all rights, title, ownership, and interest in claims, demands, and causes of action of any kind whatsoever that she has or may have arising from violations of the federal securities laws of the United States of America in connection with her purchase or acquisition of Fisker Inc. securities.

2.    I have reviewed the complaint in this action and authorize its filing and the filing of a Lead Plaintiff motion on my behalf.

3.    The Fisker Inc. securities that are the subject of this action were not purchased at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

4.    I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

5.    My transactions, including the transactions related to claims assigned to me, in Fisker Inc. securities that are the subject of the complaint during the class period specified in the complaint are as follows:

    (See attached transactions)

6.    I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years.

7.    I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

11/21/2023
_____              _____
Date                                                              Mohamed A. Zahabi

**Mohamed A. Zahabi's Transactions in Fisker Inc. (FSR)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 8/4/2023 | Bought | 2,000 | $5.9800 |
| 8/4/2023 | Bought | 2,000 | $6.0000 |
| 8/4/2023 | Bought | 2,000 | $6.0099 |
| 8/4/2023 | Bought | 2,000 | $6.2000 |
| 8/4/2023 | Bought | 2,000 | $6.2000 |
| 8/4/2023 | Bought | 2,000 | $6.2100 |
| 8/4/2023 | Bought | 1,400 | $6.1800 |
| 8/4/2023 | Bought | 1,000 | $5.8379 |
| 8/4/2023 | Bought | 1,000 | $5.8684 |
| 8/4/2023 | Bought | 1,000 | $5.9000 |
| 8/4/2023 | Bought | 1,000 | $5.8900 |
| 8/4/2023 | Bought | 1,000 | $5.8588 |
| 8/4/2023 | Bought | 1,000 | $6.0211 |
| 8/4/2023 | Bought | 1,000 | $6.1650 |
| 8/4/2023 | Bought | 1,000 | $6.2299 |
| 8/4/2023 | Bought | 600 | $6.2000 |
| 8/4/2023 | Sold | -2,000 | $6.0010 |
| 8/4/2023 | Sold | -2,000 | $6.0401 |
| 8/4/2023 | Sold | -4,000 | $6.4500 |
| 8/4/2023 | Sold | -4,000 | $6.2500 |
| 8/4/2023 | Sold | -5,000 | $5.9201 |
| 8/4/2023 | Sold | -5,000 | $6.0301 |
| 11/3/2023 | Bought | 2,000 | $4.7399 |
| 11/6/2023 | Bought | 1,000 | $4.3600 |
| 11/6/2023 | Bought | 1,000 | $4.5498 |
| 11/6/2023 | Bought | 1,000 | $4.6000 |
| 11/14/2023 | Sold | -5,000 | $3.3101 |