JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone:  (415) 773-5700
Facsimile:    (415) 773-5759

KEVIN M. ASKEW (SBN 238866)
kaskew@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 South Grand Avenue, Suite 2700
Los Angeles, California 90071
Telephone:  (213) 629-2020
Facsimile:    (213) 612-2499

WILLIAM J. FOLEY (*Admitted Pro Hac Vice*)
wfoley@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 W 52nd Street
New York, New York 10019
Telephone:  (212) 506-5000
Facsimile:    (212) 506-5151

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| JOHN A. DOUGLAS, Individually, as Trustee of the Lauren L. Douglas Trust, and On Behalf of All Others Similarly Situated,<br><br>                  Plaintiff,<br><br>       v.<br><br>HENRIK FISKER, et al.<br><br>                  Defendants. | Case No. 2:23-cv-09976-FLA (KSx)<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date:  March 14, 2025<br>Time:  1:30 p.m.<br>Judge: Hon. Fernando L. Aenlle-Rocha<br>Ctrm:  6B<br><br>Date Action Filed:  November 27, 2023 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...........................................................................................1

II.   ARGUMENT ................................................................................................2

    A.    The AC Fails To Allege An Actionable Misstatement..........................2

        1.    Statements 7-12:  Statements Made After Plaintiff's Last Stock Purchase...................................................................2

        2.    Statements 1-6:  August 4, 2023 Statements About Gross Margin...................................................................................3

        3.    Statements 1, 3, and 6:  Accurate Statements of Historical Results................................................................4

        4.    Statements 2 and 4:  Forward-Looking Statements.....................5

        5.    Statements 1, 3-6, and 11:  Puffery ............................................6

        6.    Statements 3-6:  Expressions of Opinion and Belief..................7

        7.    Statement 12:  Statement About a "Highly Complex" Q3..........7

    B.    The AC Does Not Allege A Strong Inference Of Scienter...................8

        1.    There Was No Motive To Defraud...............................................8

        2.    There Was No Deliberate Misbehavior Or Recklessness. ..........9

    C.    The AC Fails to Adequately Plead Loss Causation...........................14

    D.    The AC Fails to State a Claim under Section 20(a).............................17

III.   CONCLUSION ...........................................................................................17

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*In re Alphabet, Inc. Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021) ...................................................................................9

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008) .............................................................................10

*Binder v. Gillespie*,
    184 F.3d 1059 (9th Cir. 1999) ............................................................................3

*Butala v. Owlet, Inc.*,
    2024 WL 3648141 (C.D. Cal. Aug. 5, 2024) .....................................................10

*Carey Camp v. Qualcomm Inc.*,
    2020 WL 1157192 (S.D. Cal. Mar. 10, 2020) .....................................................2

*Cheng v. Activision Blizzard, Inc.*,
    2022 WL 2101919 (C.D. Cal. Apr. 18, 2022) .....................................................9

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017) ..............................................................................7

*In re Cutera Sec. Litig.*,
    610 F.3d 1103 (9th Cir. 2010) ............................................................................6

*DSAM Glob. Value Fund v. Altris Software, Inc.*,
    288 F.3d 385 (9th Cir. 2002) .............................................................................12

*E. Ohman J:or Fonder AB v. Nvidia Corp.*,
    81 F.4th 918 (9th Cir. 2023) ..........................................................................9, 11

*Ferris v. Wynn Resorts*,
    2021 WL 3216462 (D. Nev. July 28, 2021) ........................................................3

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
    97 F.4th 1171 (9th Cir. 2024) .......................................................................15, 16

*Gerritsen v. Warner Bros. Ent. Inc.*,
    116 F. Supp. 3d 1104 (C.D. Cal. 2015) ..............................................................8

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ..............................................................................3

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

## **TABLE OF AUTHORITIES (CONTINUED)**

**Cases**                                                                                                   **Page(s)**

*Inst. Invs. Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009) .......................................................................................14

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
   2018 WL 4181954 (N.D. Cal. Aug. 31, 2018) ..........................................................2

*Kelly v. Elec. Arts, Inc.*,
   71 F. Supp. 3d 1061 (N.D. Cal. 2014) ......................................................................2

*In re Lattice Semiconductor Corp. Sec. Litig.*,
   2006 WL 538756 (D. Or. Jan. 3, 2006) ...................................................................12

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) .................................................................................17

*Mauss v. NuVasive, Inc.*,
   2016 WL 3681831 (S.D. Cal. July 12, 2016) ..........................................................17

*Mehedi v. View, Inc.*,
   2024 WL 3236706 (N.D. Cal. June 28, 2024) .........................................................16

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) ...................................................................................3

*Middlesex Ret. Sys. v. Quest Software Inc.*,
   527 F. Supp. 2d 1164 (C.D. Cal. 2007) ...................................................................12

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ............................................................................10, 11

*Strasburger v. Blackburne & Sons Realty Cap. Corp.*,
   2020 WL 6128223 (C.D. Cal. June 25, 2020) .........................................................13

*Thomas v. Magnachip Semiconductor Corp.*,
   167 F. Supp. 3d 1029 (N.D. Cal. 2016) ..............................................................13, 14

*W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics Corp.*,
   2017 WL 3668957 (D. Or. June 2, 2017) ..................................................................5

*Wanca v. Super Micro Comput., Inc.*,
   2018 WL 3145649 (N.D. Cal. June 27, 2018) ........................................................2, 3

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

**Cases**                                                                          **Page(s)**

*Yourish v. Cal. Amplifier*,
   191 F.3d 983 (9th Cir. 1999) ................................................................................... 3

*Zucco Partners, LLC v. Digimarc Corp.*,
   552, F.3d 981, 1002 (9th Cir. 2009) ..................................................................... 11

**Statutes and Rules**

15 U.S.C.
   § 78u-5(c)(1) ............................................................................................................ 5

Fed. R. Civ. P.
   Rule 12 .................................................................................................................... 3
   Rule 12(b)(6) .......................................................................................................... 2
   Rule 23 .................................................................................................................... 3

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

## I.    **<u>INTRODUCTION</u>**

Defendants' motion to dismiss (ECF 64-1, "Motion" or "Mot.") established several independent legal reasons why the AC fails to allege securities fraud under the PSLRA's heightened pleading standards.  Plaintiff's opposition (ECF 67, "Opposition" or "Opp.") offers no legitimate basis to reach a different conclusion.

Notably, the Opposition does not contest the fact that many of the allegedly false statements are inactionable because they occurred ***after*** Plaintiff last purchased Fisker stock.  Plaintiff instead argues that he has constitutional ***standing*** to pursue his claims, which, of course, is an entirely distinct inquiry not relevant to this Motion.  With respect to Defendants' remaining falsity arguments—including that the relevant statements are "puffery," inactionable opinion statements, and/or forward-looking statements protected by the PSLRA's safe harbor—Plaintiff offers no credible response.

The Opposition also confirms the absence of scienter.  Plaintiff points to no facts in the AC that establish Defendants knew something about Fisker's gross margin that was inconsistent with their public statements.  Instead, Plaintiff falls back on allegations that have been repeatedly found to be inadequate to plead scienter, e.g., that Defendants must have "had access" to unspecified corporate information by virtue of their executive roles.  None of Plaintiff's scienter-related allegations individually raises the requisite "strong inference" of scienter; nor does his effort to lump together a medley of unrelated and plainly deficient allegations clear the PSLRA's high bar.

Finally, as a matter of law, Plaintiff is unable to show that Defendants caused his losses.  There is no dispute that Plaintiff sold *the entirety* of his Fisker stake before "the truth" supposedly became known, and thus the resulting drop in share price had no impact on him.  Moreover, two of the three "corrective disclosures" identified in the AC are unrelated to Defendants' allegedly false statements, and thus there is no conceivable chain of causation.

- 1 -

## II.    ARGUMENT

### A.    The AC Fails To Allege An Actionable Misstatement.

#### 1.    Statements 7-12:  Statements Made After Plaintiff's Last Stock Purchase

As explained in the Motion, statements made **after** Plaintiff last bought Fisker stock are inactionable because Plaintiff cannot plead an essential element of his claim—namely, that those statements were made "in connection with the purchase or sale of any security."  Mot. 7.  Plaintiff attempts to sidestep this issue by erroneously construing it as one involving his **standing** as a class representative, arguing that "the Court need not consider [Defendants'] standing argument."  Opp. 14.  But Plaintiff is apparently confused; the Motion does not challenge Plaintiff's standing to represent a class.  It instead argues that Plaintiff has not stated a claim for the post-purchase alleged misstatements—an argument supported by the weight of authority in the Ninth Circuit.  *See, e.g.*, *Wanca v. Super Micro Comput., Inc.*, 2018 WL 3145649, at *7 (N.D. Cal. June 27, 2018) (whether post-purchase statements are inactionable is "not [an issue] of constitutional standing" because "plaintiff cannot . . . pursue claims based on the statements allegedly made after his stock purchase"); *Carey Camp v. Qualcomm Inc.*, 2020 WL 1157192, at *3–4 (S.D. Cal. Mar. 10, 2020) (rejecting a similar "standing" argument and noting that "the cases cited by Plaintiffs address challenges to investors' standing under Article III, whereas here Defendants are asserting that these statements as pled are not actionable"); *Kelly v. Elec. Arts, Inc.*, 71 F. Supp. 3d 1061, 1069 (N.D. Cal. 2014) (rejecting plaintiffs' "misplaced" argument about standing and instead holding that the relevant issue on a 12(b)(6) motion was "whether lead plaintiff[] could have relied on defendants' [later] statements if they purchased their . . . stock" before that date); *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 2018 WL 4181954, at *3–4 (N.D. Cal. Aug. 31, 2018) (granting motion to dismiss as to post-purchase statements).

- 2 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Accordingly, Plaintiff's reliance on *Melendres v. Arpaio*, a civil rights case involving a challenge to the named plaintiffs' Article III standing, is misplaced. 784 F.3d 1254 (9th Cir. 2015); Opp. 14–15.  Other cases cited in Plaintiff's opposition are inapposite for similar reasons.  *See, e.g.*, Opp. 15 (citing cases analyzing "standing").[1]

Plaintiff's cursory attempt to distinguish Defendants' cases falls short. *Wanca* does not, as Plaintiff suggests, "overlook" *Melendres*.  Opp. 16.  The two cases analyze different issues—in *Melendres*, standing, and in *Wanca*, failure to state a claim.  Plaintiff also says that the Ninth Circuit opinions in *Binder v. Gillespie*, 184 F.3d 1059 (9th Cir. 1999) and *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) should be disregarded because they did not involve class claims.  Opp. 16.  But again, the issue is not whether Plaintiff has standing as a class representative; it is whether Plaintiff has adequately alleged a necessary element of his Section 10(b) claim.  He has not.

### 2.   <u>Statements 1-6</u>:  August 4, 2023 Statements About Gross Margin

Plaintiff says that Defendants' August 4, 2023 statements about gross margin were misleading because, "[b]y August 4, Fisker's gross margins were already being adversely impacted by significant, excess fixed production overhead costs[.]" Opp. 7.  Plaintiff does not dispute that, in order to adequately plead falsity, he must allege particularized, contemporaneous facts demonstrating that the purported misstatements were false or misleading ***at the time they were made***. *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999).  But the AC contains no facts plausibly suggesting that, on August 4, 2023, Defendants were aware not only that Fisker was incurring excess fixed production costs, but that those fixed costs were

[1] Plaintiff relies heavily on *Ferris v. Wynn Resorts*, but that decision relies entirely on decades-old Ninth Circuit authority regarding a Rule 23 motion—not a Rule 12 motion.  2021 WL 3216462, at *13 (D. Nev. July 28, 2021) (citing *Blackie v. Barrack*, 524 F.2d 891, 902–03 (9th Cir. 1975)).

- 3 -

negatively impacting Fisker's gross margin.  Those allegations simply cannot be found in the AC.

The conclusory allegations referenced in the Opposition do not help Plaintiff satisfy his pleading burden.  For example, Defendants' alleged familiarity with general concepts related to Fisker's gross margin calculations, *see* Opp. 8, does not show that Defendants were contemporaneously aware, on August 4, that fixed overhead costs were impacting Fisker's reported gross margin figures.  Nor do allegations that analysts asked questions about gross margin in February and May 2023, *see* Opp. 7-8 (citing AC ¶¶ 41, 44, 50, 95, 99).

Plaintiff further asserts that by August 2023, "it was 'apparent that the Company was facing potential financial distress.'"  Opp. 9 (citing AC ¶¶ 52, 115, 119).  This allegation about "potential financial distress" in August 2023 is premised entirely on a declaration filed nearly a year later by Fisker's Chief Restructuring Officer—who was not even at the Company in August 2023.  As an initial matter, the cited declaration should be given no weight because it was later amended, with the language cited by Plaintiff removed.  Mot. 17 n.7.  Regardless, a vague allusion to "potential financial distress" is not a particularized allegation that Defendants specifically knew that gross margin was being impacted by fixed production costs.

Finally, Plaintiff offers no response to Defendants' argument that they could not have had a duty to disclose information that Plaintiff does not sufficiently allege was actually in Defendants' possession.  *See* Mot. 8-9.

**3.**     <u>**Statements 1, 3, and 6:**</u>  **Accurate Statements of Historical Results**

The Opposition concedes that "Plaintiff doesn't allege that Fisker's 2Q23 gross margins were inaccurate."  Opp. 8.  Instead, Plaintiff contends that other portions of Statements 1, 3, and 6 were misleading because they concealed the purported fact that "large fixed costs were impacting Fisker's gross margins[.]"

- 4 -

Opp. 8-9.  That claim fails because, as explained in the preceding section, Plaintiff alleges no particularized facts showing that gross margin was in fact being affected as of August 4, 2023.

### 4.   Statements 2 and 4:  Forward-Looking Statements

Plaintiff argues that the PSLRA safe harbor for forward-looking statements does not apply to Statements 2 and 4 because Plaintiff is purportedly challenging the omission of *present* facts.  Opp. 9-10.  Specifically, Plaintiff says that at the time of the allegedly misleading forward-looking statements, which included a caution that Fisker's gross margin predictions depended on input costs remaining steady, "Fisker's input costs were already dramatically changing."  *Id*. 9.  Plaintiff's focus on "input costs" is misplaced.  Fisker's use of the term "input costs" was understood by the Company and the market to refer to the costs of ***materials***, like batteries and steel.  *See* AC ¶¶ 44, 100.  Even if Plaintiff alleged that Fisker was contemporaneously facing increased costs for material inputs (he does not), those increased ***material*** costs would be irrelevant to Plaintiff's theory of falsity, which instead involves the alleged impact of "excess fixed production ***overhead*** costs." Opp. 9 (emphasis added).

In any event, Plaintiff's argument that the safe harbor does not apply to omissions of present facts is in direct conflict with the plain language of the statute, which applies to "any private action . . . based on an untrue statement of a material fact ***or omission of a material fact***."  15 U.S.C. § 78u-5(c)(1) (emphasis added). To the extent Plaintiff's cited cases (Opp. 9) hold otherwise, they are inconsistent with the unambiguous plain language of the statute.  *See W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics Corp.*, 2017 WL 3668957, at *20 (D. Or. June 2, 2017) ("[T]the plain language of the PSLRA safe harbor provision strongly indicates that the safe harbor is applicable to forward-looking statements alleged to be misleading due to the omission of material fact, and . . . the applicable jurisprudence provides no indication that the Ninth Circuit would conclude to the

- 5 -

contrary.").

Plaintiff further contends that Defendants have not shown that the forward-looking statements were accompanied by meaningful cautionary language. Opp. 9. Plaintiff complains, without elaborating, that "Defendants' cited risk warnings are entirely generic and are in no way 'directly related' to the alleged omissions." *Id.* But Plaintiff cannot plead around the safe harbor with "conclusory allegation[s]" that risk factors were too generalized. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010). And Fisker's cautionary statements *did* specifically warn of the risks Plaintiff asserts later came to pass, including that (1) Fisker was "an early stage company with a history of losses, and *expect[ed] to incur significant expenses and continuing losses in the future,*" ECF 64-8, RJN Ex. 6 at 76; and (2) Fisker's "operating and financial results forecast relie[d] in large part upon assumptions and analyses developed by [the Company]," and *"[i]f these assumptions or analyses prove[d] to be incorrect, [its] actual operating results may be materially different from [its] forecasted results*." *Id*. (emphasis added).

Finally, even if the Court accepts Plaintiff's argument that the cautionary language was insufficient, Statements 2 and 4 are nonetheless inactionable for the independent reason that the AC does not allege specific facts showing Defendants' actual knowledge that any forward-looking statement was false when made. Mot. 11. The Opposition ignores this issue altogether, failing to identify any allegation of "actual knowledge."

### 5.   Statements 1, 3-6, and 11: Puffery

The alleged misstatements in the AC include numerous statements of "puffery." As shown in the Motion, these statements are not actionable because there is no verifiable metric against which to measure the truth or falsity of subjective assessments like "sets the stage," "balances," and "extremely complex." For each of these challenged statements, Defendants cited cases in which substantially similar statements were held to be inactionable. Mot. 11-13. Rather

- 6 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

than engaging with these specific instances of puffery, the Opposition argues generally that the purported "context" for all of these statements, as related in some way to gross margin, somehow renders them misleading. Opp. 10-12. But vague statements of optimism—like those touting "the benefit of our unique vehicle capabilities," AC ¶ 124—are not transformed into actionable misstatements just because Plaintiff alleges that the purported "context" is that "analysts relied" on Fisker's statements about gross margin. Opp. 11.

### 6.   <u>Statements 3-6</u>:   Expressions of Opinion and Belief

Defendants' Motion demonstrated that the statements of opinion and belief challenged in the AC are not actionable.  Plaintiff argues these statements are actionable because they are "factual representations at their core." Opp. 12. But in reality, each of these statements reflects an expression of subjective belief—like "I think," "I expect," and "I'm … really excited."  Contrary to Plaintiff's argument, they do not reflect "certainty." Mot. 14.

Most fatal to Plaintiff's argument, however, is that the AC does not allege particularized facts demonstrating that Defendants' statements of opinion were misleading when they were made. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615–17 (9th Cir. 2017) (plaintiff must allege specific facts establishing "both that 'the speaker did not hold the belief she professed' and that the belief is objectively untrue"). *See* Mot. 14.

### 7.   <u>Statement 12</u>:   Statement About a "Highly Complex" Q3

Plaintiff argues that he does not "allege that [Dr.] Gupta-Fisker's response was literally false, or question her characterization that the quarter was 'complex.'" Opp. 14.   But this is belied by Plaintiff's own pleading, which alleges that Statement 12 "was materially false and/or misleading when made . . . because . . . [Dr. Gupta-Fisker] ***failed to disclose that . . . many of the accounting errors were not complex,*** but instead involved simple expense misclassifications intended to falsely inflate Fisker's gross margins."   AC ¶ 127 (emphasis added).   The

- 7 -

Opposition's effort to reframe Plaintiff's claim about Statement 12 is unavailing. "As courts routinely recognize, it is improper for a plaintiff to assert an unpled theory of liability in opposition to a defendant's Rule 12(b)(6) motion to dismiss." *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1126 (C.D. Cal. 2015).

**B. The AC Does Not Allege A Strong Inference Of Scienter.**

**1. There Was No Motive To Defraud.**

Plaintiff concedes that neither Defendant attempted to profit from the allegedly fraudulent scheme by selling Fisker stock during the Class Period. Opp. 18. While he argues that the absence of insider stock sales does not altogether "negate" a strong inference of scienter (*see id.*), Plaintiff conspicuously fails to address the authority in Defendants' Motion finding that it significantly "detracts from" such a finding. *See* Mot. 16.

Plaintiff then contends that Defendants' "desire to raise company financing" *combined with* the "red flags" of a company's financial condition is sufficient to plead scienter. Opp. 16-17. There are two problems with this argument. First, there were no contemporaneous "red flags" when the convertible note transactions closed in summer 2023. The only purported "red flag" Plaintiff identifies is a statement in a *June 2024* declaration from a Fisker employee who did not join the Company until *April 25, 2024*, and who later amended his declaration to remove the very reference upon which Plaintiff relies. *See* Opp. 17, n.5-6; *see also* Mot. 17, n.7. Second, Plaintiff tellingly does not address the glaring timing discrepancies in his narrative about Defendants' supposed "desire to raise financing," i.e., that most of the convertible notes closed before the Class Period began and all closed before the alleged misstatements in November 2023. *See* AC ¶¶ 151-52. It makes no sense that Defendants were "motivated" to lie in order "to secure[] . . . additional financing" *that had already been secured*. *See* Opp. 16-17.

- 8 -

### 2.   **There Was No Deliberate Misbehavior Or Recklessness.**

The AC does not support an inference that Defendants either knew their statements were false or it was "so obvious that [they] must have been aware of it." *See* Mot. 17-18. To the contrary, the most compelling inference is that Defendants made gross margin projections in good faith but later learned, in preparing the Company's third quarter financial disclosures, that certain accounting adjustments needed to be made. *Id.* 24. "Honest optimism followed by disappointment is not the same as lying or misleading with deliberate recklessness." *Cheng v. Activision Blizzard, Inc.*, 2022 WL 2101919, at *12 (C.D. Cal. Apr. 18, 2022).

Plaintiff's scienter allegations, taken individually or collectively, are insufficient to allege a strong inference of scienter.

**Defendants' general "access to information."** Plaintiff argues that, to support an inference of scienter, he "only needs to allege that Defendants had access to information which contradicts their public statements." Opp. 18. This is wrong. General allegations concerning a defendant's "access" are insufficient as a matter of law. *See* Mot. 18-19. Plaintiff relies chiefly on *In re Alphabet, Inc. Securities Litigation*, which concerned a specific document—the "Privacy Bug Memo"—that contained information contradicting the defendants' public statements. *See* Opp. 19 (quoting 1 F.4th 687, 696 (9th Cir. 2021)). While the *Alphabet* complaint did "not directly allege that [Alphabet's CEO] read the Privacy Bug Memo," the court considered "the executive's access to the information," i.e., that the CEO "received weekly reports" from someone who had read the memo and "approved a plan . . . [related to] concerns revealed by the Privacy Bug Memo." 1 F.4th at 706. In other words, the *Alphabet* plaintiffs identified a specific document containing contradictory information and made detailed allegations about the CEO's access to the information contained therein.[2]

---

[2] Plaintiff also references *E. Ohman J:or Fonder AB v. Nvidia Corp.*, but, like *Alphabet*, this case deals with an executive's access to **specific documents**. *See* 81

- 9 -

Here, in contrast, Plaintiff does not identify or describe the contents of any report or document. Rather, he alleges broadly that Defendants "were hands-on," were "involved in Fisker's day-to-day operations" and "provided feedback to the financial statements." Opp. 19 (citing AC ¶¶ 138, 140, 164, 169). These general allegations, without any reference to specific documents, are insufficient to plead scienter. *See, e.g.*, *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) ("Missing [from the complaint] are allegations linking ***specific reports and their contents*** to the executives" alleged to have committed fraud) (emphasis added); *see also* Mot. 18-19.[3]

**The Former Employee allegations**. In their Motion, Defendants observed that the AC's "former employee" ("FE") allegations could not support a strong inference of scienter because both "witnesses lack[ed] first hand knowledge regarding what the individual defendants knew or did not know about [the Company's] financial health" during the Class Period. *Intuitive Surgical*, 759 F.3d at 1063; *see also* Mot. 19-20. In response, Plaintiff points to three "particularized

---

F.4th 918, 940 (9th Cir. 2023) ("[The CEO] had detailed sale reports prepared for him . . . [and] had access to detailed data on both crypto demand and usage of NVIDIA's products."). Similarly unavailing is Plaintiff's citation to the Court's decision in *Butala v. Owlet, Inc.*, 2024 WL 3648141, at *7 (C.D. Cal. Aug. 5, 2024), for the proposition that a plaintiff is not required to "point to any internal company communications showing that [a defendant] intended to mislead the public." Opp. 18. Plaintiff is conflating two distinct arguments. Defendants never suggested that Plaintiff needed to allege specific internal documents establishing an *intent to mislead*. Rather, they correctly argued that if Plaintiff wanted to establish scienter with allegations of Defendants' "access" to corporate documents, he needed to identify those documents and articulate how they contradicted Defendants' public statements. *See* Mot. 18-19.

[3] Relatedly, Plaintiff points to the "core operations doctrine" and suggests that "Fisker's gross margins were of such prominence . . . that it would be 'absurd to suggest' that top management was unaware of them." Opp. 24 (citing *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989 (9th Cir. 2008)). Plaintiff misses the point; Defendants obviously were "aware" of Fisker's gross margin projections. But there are no particularized allegations that Defendants were aware, in August 2023, that Fisker's full-year gross margin performance would fall short of those projections.

- 10 -

allegations" from the FEs:  (1) that Dr. Gupta-Fisker wanted to use "new vehicle and financial models" with investors "even when there was a lack of time to vet the figures"; (2) that Dr. Gupta-Fisker was "hands-on" and had "access to information"; and (3) "that PwC would not sign off on Fisker's 3Q23 10-Q by the filing deadline." *See* Opp. 19.

But again, these allegations do not suggest that Defendants had information that contradicted Fisker's public statements.  For example, the supposed "rush" to the Nissan partnership model before "vet[ting] the figures" occurred in 2024, *months* after the disclosures relevant to this case; it has no bearing on what Dr. Gupta-Fisker knew in 2023.  And the allegation that Dr. Gupta-Fisker had "access to" Company information is irrelevant; the same could be said about every CFO in America.  *See Nvidia*, 81 F.4th at 941 ("FE 1's statements that [CFO] was authorized to access [company information] . . . are insufficient to establish a strong inference [of scienter].").  With respect to PwC's supposed reticence to "sign off" on Fisker's financials, the AC elsewhere provides an innocent explanation for the delayed filing of the 10-Q: "the then recent resignation of [John Finnucan] and the appointment of a new CAO."  AC ¶ 6.  In any event, Plaintiff concedes that Fisker filed its 10-Q (and thus PwC "signed off" on it) a mere nine days later. *Id*. ¶ 79.

**Employee resignations**.  Plaintiff suggests that there were three "suspicious departures" from Fisker in late 2023, but this is plainly wrong.  Mr. Finnucan had been Fisker's CAO for several years, and he resigned to advance his career, i.e., to become the chief financial officer of a private company.  Mot. 4.  Dr. Huhnke, Fisker's then-CTO, is not alleged to have had any involvement with Fisker's accounting processes and is mentioned in the AC only in connection with his resignation.  Neither of these departures is remotely suspicious.  Conclusory allegations that an employee "resigns or retires during the class period . . . cannot support a strong inference of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552, F.3d 981, 1002 (9th Cir. 2009).

- 11 -

While Mr. Beuting's tenure at Fisker was admittedly brief, Plaintiff has not connected his resignation to any purported wrongdoing. The Opposition cites *Middlesex Retirement System. v. Quest Software Inc.*, for the proposition that a "highly suspicious" resignation "leans heavily towards a finding of scienter." Opp. 20 (citing 527 F. Supp. 2d 1164, 1188 (C.D. Cal. 2007)). But that case concerned a truly "suspicious" resignation: "The purported reason for [the CFO's] departure was his refusal to cooperate with the Special Committee investigating the option [backdating allegations]." *See id.* at 1176.

**Supposed "accounting discrepancies."** Plaintiff argues that "accounting discrepancies" in certain Fisker documents "reflect deliberate recklessness" because the documents "***should be identical***." Opp. 21 (emphasis in original). Plaintiff apparently fails to grasp that there are often *months* between related filings—e.g., a Q4 press release and a Form 10-K. In the interim, a company like Fisker will continue to receive financial and operational information, and thus it is common for adjustments to be made in the later financials. Far from reflecting "deliberate recklessness," these (often minor) adjustments are a practical reality in public company accounting. In any event, "the mere publication of inaccurate accounting figures . . . does not establish scienter." *DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002).

**SOX certifications**. Contrary to Plaintiff's suggestion, Defendants' signatures on SOX certifications do not "add to the scienter puzzle." *See* Opp. 22. The Opposition relies on *In re Lattice Semiconductor Corp. Sec. Litig.*, but in that case, the SOX certifications "omitted a paragraph" certifying internal controls disclosures. *See* 2006 WL 538756, at *18 (D. Or. Jan. 3, 2006). It was "the omission of this paragraph," which had appeared in prior certifications, that "support[ed] the inference" that the *Lattice* defendants "were aware of internal control problems." *Id.* Here, in contrast, there was nothing missing from Fisker's SOX certifications, and thus Plaintiff contends that the act of "signing" the

- 12 -

certifications themselves supports an inference of scienter. AC ¶¶ 137, 173-75. The Ninth Circuit has squarely rejected this argument. *See* Mot. 23.

**Dr. Gupta-Fisker's prior testimony**. It is telling that Plaintiff felt compelled to repeatedly and grossly exaggerate the arbitrator's findings in the *Albano* proceedings, i.e., by arguing that Dr. Gupta-Fisker committed "prior (uncharged) perjury." Opp. 22-23. The *Albano* arbitrator did not find that Dr. Gupta-Fisker committed perjury. And while Plaintiff cites several decisions, only one has anything to do with the scienter inquiry, *Strasburger v. Blackburne & Sons Realty Cap. Corp.*, 2020 WL 6128223, at *6 (C.D. Cal. June 25, 2020).[4] In that case, the court merely found that if a defendant is alleged to have previously "engaged in the type of reckless conduct alleged in the [instant action]," for example, "quot[ing] a grossly inflated appraisal figure when soliciting investment," that "pattern of related conduct makes Plaintiff's scienter allegations all the more compelling." *Id.*

Here, the "related conduct" is not related at all. Plaintiff is referencing deposition testimony from an entirely separate matter, involving a dispute between the Company and a former employee. *See* AC ¶ 145-46. These two matters are "related" only if one assumes that *any* insinuation of prior dishonesty by an employee is "related" to years-later corporate disclosures. That is not the law. *See* Mot. 23 (citing cases).

**The SEC Inquiry.** Plaintiff argues that the "SEC's ongoing investigation of Fisker, which was not disclosed *until after Fisker filed for bankruptcy*, further contributes to an inference of scienter." Opp. 23 (emphasis in original). While Plaintiff emphasizes the timing of this disclosure, he does not actually claim that the SEC inquiry could have been disclosed earlier, presumably because he has no idea when the inquiry began. In any event, Plaintiff's cited authority, *Thomas v.*

---

[4] The other cited decisions concern the standards for granting injunctive relief and the introduction of reputation evidence during cross-examination. Opp. 22-23.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

*Magnachip Semiconductor Corp.*, found that allegations concerning an SEC investigation "by themselves are not sufficient to plead scienter," 167 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016), and that scienter was adequately alleged only where defendant company "admitted its own management was responsible for the errors that led to the allegedly false statements," *id.* at 1026.

**"Response to analyst questions."** Plaintiff suggests that Dr. Gupta-Fisker's response to questions from analysts about gross margin guidance is "powerful evidence" of scienter. Opp. 23. Not so. Each of Dr. Gupta-Fisker's responses was an appropriately caveated forward-looking statement. AC ¶¶ 94-95, 100. Plaintiff points to *Institutional Investors Group v. Avaya, Inc.*, but that decision merely found that numerous analyst questions about a matter of historical fact, e.g., "whether the company's pricing has held steady," might contribute to a finding of scienter where the defendant makes "confident, unhedged" responses that prove incorrect. 564 F.3d 242, 269–70 (3d Cir. 2009). In other words, because the *Avaya* analysts were asking multiple questions about existing facts that were easily confirmable, "the possibility that [defendant] was ignorant is not necessarily exculpatory." *See id.* Here, in contrast, the analysts asked questions about Fisker's ability *in the future* to achieve the gross margin projections. *See, e.g.*, AC ¶ 94 ("Gupta-Fisker was asked if there was any risks in achieving the provided 8-12% gross margin guidance range.").

## C.    The AC Fails to Adequately Plead Loss Causation.

As set out in the Motion, Plaintiff has not adequately alleged that Defendants "caused the loss for which he seeks to recover damages" because: (1) the corrective disclosures that supposedly revealed "the truth" do not relate to what Plaintiff contends was false; and/or (2) Plaintiff admittedly sold his shares before "the truth" became known. Mot. § IV.C.

In response, Plaintiff incorrectly asserts that Defendants' "relation back" argument "relies on an outdated outlier case that cannot overcome recent Ninth

- 14 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Circuit precedent[.]"  Opp. 26-27.  Notably, Plaintiff fails to identify the purportedly "outdated" case, let alone explain why it is an "outlier" in the Ninth Circuit.  And notwithstanding Plaintiff's vague denunciation, the Ninth Circuit decision upon which he chiefly relies, *In re Genius Brands Int'l, Inc. Sec. Litig.*, confirms rather than contradicts Defendants' position that corrective disclosures must relate back to alleged misrepresentations by revealing "new facts that . . . render some aspect of the defendant's prior statement false or misleading."  97 F.4th 1171, 1184–85 (9th Cir. 2024).  Specifically, the *Genius Brands* court found that an SEC filing could not "'reasonably [be] read to reveal' the truth behind [an] allegedly misleading tweet **because the tweet and the [filing] speak to different things**," and thus the court could not "say that, on the basis of the [filing], the 'market understood' that the . . . tweet was false."  *Id.* (emphasis added).

Plaintiff cherry-picks one announcement in *Genius Brands* that he says had "nothing to do" with a prior misrepresentation to suggest that generalized "bad news" can constitute a corrective disclosure.  Opp. 27.  This is wrong.  The announcement in question was found to be corrective **solely because** investors had previously "speculated" (based on prior disclosures) that Genius Brands' planned announcement of a "key business development" would include news of a buyout, such that when the announcement then "said nothing" about it, and instead discussed other business ventures, investors "realize[d]" that Genius Brands had previously misrepresented its prospects of being acquired.  97 F.4th at 1188.

Those circumstances do not exist here.  Neither the November 8 announcement of delayed Q3 financial disclosures nor the November 20 announcement of the CAO's resignation rendered any aspect of Fisker's prior statements about gross margin false or misleading.  Mot. 25-27.  Nor does Plaintiff allege that these unrelated announcements caused investors to "realize" any previously suspected accounting issues in Fisker's prior statements, even when

- 15 -

considered together as partial corrective disclosures. *Id.*[5]  In other words, the November 3 and 20 announcements cannot "reasonably be read to reveal the truth" behind Defendants' gross margin projections because the disclosures simply "speak to different things." *Genius Brands*, 97 F.4th at 1185.

With respect to the argument that Plaintiff sold all his Fisker stock before the November 13 and 20 announcements, Plaintiff responds that a lead plaintiff "who does not retain stock in the defendant corporation throughout all corrective disclosures" may still serve as an adequate class representative for loss causation pleading purposes, referencing this Court's prior decision appointing a lead plaintiff.  Opp. 27.  Defendants acknowledge the Court's prior order, but did not have the opportunity to address this issue prior to the appointment of a lead plaintiff and thus request that the Court consider whether Plaintiff has adequately pleaded loss causation in light of the arguments Defendants now raise.  These arguments are founded in recent, in-circuit case law assessing the very circumstances at play here. *See* Mot. 27-28.

Specifically, where a partial disclosure does not reveal the "relevant truth" ***prior to*** a lead plaintiff's stock sale, he "cannot attribute [his] losses" to the later revealed "truth" and thus fails to allege loss causation.  Mot. 26-27 (citing *Mehedi v. View, Inc.*, 2024 WL 3236706, at *9 (N.D. Cal. June 28, 2024)).  That is the case here, where Plaintiff sold his stock three days before the November 13 earnings release in which Fisker reported a gross margin of -17%.  Mot. 26.

In fact, Plaintiff previously ***conceded*** this point in his lead plaintiff briefing: "[Plaintiff] ***does not claim that he suffered losses*** in connection with the two later corrective disclosures . . . [L]ead plaintiffs are expected to add additional plaintiffs

---

[5] Indeed, Plaintiff acknowledges that many of the alleged "new facts" key to the purported "relevant truth" were not "revealed" to the market until the November 22, 2023 filing of the third quarter Form 10-Q—a disclosure that occurred long after Plaintiff sold his stock and that preceded an immediate ***increase*** in Fisker's stock price.  Mot. 28.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

*to ensure standing to assert the class's claims* . . . As such, [Plaintiff] will be able to pursue all class claims." ECF 47 p. 5. In other words, Plaintiff recognized that he could not, by himself, allege loss causation for the latter two disclosures without "add[ing] additional plaintiffs," which he plainly has not done.

Finally, Plaintiff relies on inapposite caselaw when arguing that courts "regularly find that plaintiffs have . . . [pleaded] loss causation under similar scenarios." Opp. 27 (citing *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016) and *Mauss v. NuVasive, Inc.*, 2016 WL 3681831, at \*11 (S.D. Cal. July 12, 2016)). Both cases merely show that partial disclosures can amount to a "corrective disclosure"—a point that Defendants do not dispute (Mot. 27)—and neither address whether partial disclosures may still amount to a "corrective disclosure" when the truth is revealed *after* a plaintiff has sold his stock. *Id.*

**D.      The AC Fails to State a Claim under Section 20(a).**

Plaintiff's Section 20(a) claims should be dismissed given Plaintiff's failure to adequately plead a primary violation of Section 10(b).

**III.      CONCLUSION**

The AC should be dismissed.

Dated: February 20, 2025             ORRICK, HERRINGTON & SUTCLIFFE LLP

                                                            */s/ Kevin M. Askew*
                                                     KEVIN M. ASKEW
                                                     Attorneys for Defendants

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief contains 5,414 words, which complies with the word limit set by the Court's order dated November 14, 2024 (ECF No. 61).


Dated:  February 20, 2025          ORRICK, HERRINGTON & SUTCLIFFE LLP


                                   */s/ Kevin M. Askew*
                                   KEVIN M. ASKEW
                                   Attorneys for Defendants

- 18 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT